UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

LOW CARBON PROCESSORS, LLC,

                              Plaintiff,

            vs                                          6:08-CV-526

KENNAMETAL, INC.,
                              Defendant.


~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~

APPEARANCES:                              OF COUNSEL:

COHEN & COHEN, LLP                        RICHARD A. COHEN, ESQ.
Attorneys for Plaintiff
Suite 505
258 Genesee Street
Utica, New York 13502

CARTER, CONBOY, CASE,
   BLACKMORE, MALONEY & LAIRD, P.C.       JAMES A. RESILA, ESQ.
Attorneys for Defendant
20 Corporate Woods Boulevard
Albany, NY 12211-2362


DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

        Plaintiff Low Carbon Processors, LLC ("plaintiff" or "Low Carbon") brings six causes

of action against defendant Kennametal, Inc. ("defendant" or "Kennametal").  Plaintiff's

First Cause of Action alleges that defendant breached the terms of a confidentiality

agreement by revealing to a competitor certain confidential and proprietary information.

Plaintiff's Second Cause of Action alleges that defendant breached an implied covenant of

good faith and fair dealing when it agreed not to reveal confidential and proprietary information and subsequently disclosed said information to plaintiff's competitor.  As a Third Cause of Action, plaintiff alleges that defendant was unjustly enriched as a result of its breach of contract.  Plaintiff's Fourth and Fifth Causes of Action allege that defendant committed a misrepresentation and fraud by misrepresenting that it intended to enter into an initial trial agreement to determine if it would financially benefit from the arrangement, and if so, that it intended to enter into a subsequent, more long-term agreement.  Finally, plaintiff's Sixth Cause of Action seeks injunctive relief to prohibit defendant from utilizing, employing, or disclosing plaintiff 's confidential and proprietary information.

Kennametal moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all six causes of action.  Low Carbon opposed the motion.  Defendant replied.  Oral argument was heard in Utica, New York on July 2, 2009.  Decision was reserved.

## II. BACKGROUND

Low Carbon, a New York State Limited Liability Company, is engaged in the business of setting up recycling programs for manufacturing corporations that generate scrap metal.  Specifically, plaintiff removes scrap metal from manufacturing plants and shares in the profit that is generated as a result of shipping the metal into more profitable markets established by plaintiff.

Kennametal, a foreign corporation, operates a manufacturing plant located in Pennsylvania.  As part of its operation, defendant generates scrap steel turnings.  Consequently, defendant entered into a contract with Joe Krentzman & Son, Inc.

("Krentzman") on June 1, 2006, to remove the scrap metal and provide defendant with a return of the "Iron Age Scrap Price" less $40.00 per ton.  (Cohen Aff., Dkt. No. 14, ¶ 5.)

In July 2007, plaintiff and defendant allegedly entered into an oral confidentiality agreement in which Low Carbon revealed to Kennametal certain information including, but not limited to, "pricing information and markets for scrap metal" as well as certain "know how" and "trade information" that could be used to increase the revenues that defendant obtained from the sale of it's scrap metal (collectively, the "Confidential and Proprietary Information").  (Cohen Aff., Dkt. No. 14, ¶¶ 4, 6.)  Plaintiff alleges that defendant covenanted not to utilize or employ for gain any of the Confidential and Proprietary Information without plaintiff.  Id.  In the complaint, plaintiff alleges that defendant breached the confidentiality agreement by selling its scrap directly to plaintiff's vendees for gain without plaintiff.

In early 2008, plaintiff and defendant entered into a written trial agreement ("Trial Agreement") whereby plaintiff agreed to remove three loads of scrap steel under a somewhat complicated profit-sharing formula.  (Pl.'s Compl., Dkt. No. 1-1, ¶ 5.)  Plaintiff, pursuant to the terms of the Trial Agreement, removed several loads of scrap metal from defendant's Pennsylvania manufacturing plant and sent two profit sharing statements to defendant listing, among other things, the dates of the deliveries, the amounts, the designee, the broker, the base revenue, and the profit sharing total.  (Resila Aff., Ex. H-K, Dkt. No. 12.)  The two profit sharing statements are identical in all respects except that the second statement, sent via email on March 12, 2008, included a note that "this information is confidential and proprietary and is not to be shown or discussed with Low Carbon competitors.  If this information is discussed, [plaintiff] will be able to receive damages

based on their lost revenues." (Resila Aff., Ex. K, Dkt. No. 12.) After calculation based upon plaintiff's formula, defendant received an amount per ton that was approximately the amount yielded by taking the "Iron Age Scrap Price" plus $12.60, or approximately $52.00 more per ton than it had received from Krentzman.

On March 11, 2008, after Low Carbon successfully performed its obligation under the Trial Agreement, but prior to sending the second profit sharing statement, defendant entered into a new contract with Krentzman in which Krentzman agreed to remove defendant's scrap metal and return a profit to defendant at a rate of "Iron Age Scrap Price" plus $12.60–a price approximately the same as that paid by Low Carbon under the Trial Agreement. (Resila Aff., Ex. L, Dkt. No. 12.) Defendant argues that it accepted Krentzman's proposal for a number of reasons including the complex pricing formula offered by plaintiff, the need to involve multiple sub-contractors in doing business with plaintiff, and the erratic nature with which plaintiff approached defendant to conduct business.

## III.  DISCUSSION

The body of substantive law that applies in the present case is determined under New York's choice of law rules since subject matter jurisdiction is grounded on the diversity statute. Under New York's choice of law rules, the "center of gravity" test is generally applied to cases involving contract disputes. The "center of gravity" requires courts to consider the spectrum of significant contacts, including the place of contracting, negotiation, performance, the location of the subject matter of the contract, and the contracting parties domicile, to determine which state law to apply. Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 226 (N.Y. 1993).

In the present action, all the business pertaining to this matter was conducted in Pennsylvania.  The removal of scrap metal from Kennametal's facility occurred in Pennsylvania.  Similarly, all the contract negotiations took place in Pennsylvania.  The only connection to New York State is that Low Carbon is incorporated in New York.  Accordingly, under the "center of gravity" test, Pennsylvania law is the proper substantive law to be applied in this case.

### A.  Motion for Summary Judgment Standard

Kennametal moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all six causes of action.  Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact.  FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986).  After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial.  FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" or by "a factual argument based on conjecture or surmise.  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006);  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.

There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248-49, 106 S. Ct. at 2510; <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587, 106 S. Ct. at 1356.

### B. <u>Breach of Contract (First Cause of Action)</u>

Kennametal moves for summary judgment on Low Carbon's <u>First Cause of Action</u>, which alleges that defendant breached the confidentiality agreement by either selling the scrap to plaintiff's vendees or by revealing to Krentzman certain Confidential and Proprietary Information acquired after plaintiff performed its obligations under the Trial Agreement. A breach of contract claim has three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. <u>Omicron Systems, Inc. v. Weiner,</u> 860 A.2d 554, 564 (Pa. Super. 2004) (internal citations omitted). Thus, in light of the standard for summary judgment, the pertinent question is whether, taking all facts and inferences in favor of plaintiff, there are any disputed issues of fact which bear on the elements for breach of contract.

The facts are in dispute with respect to the existence of a confidentiality agreement. Low Carbon alleges in the complaint that prior to entering into the Trial Agreement, plaintiff and Kennametal entered into an oral confidentiality agreement. Defendant, on the other hand, denies the existence of such an agreement. Taking all facts and inferences in favor of the plaintiff, there is a genuine issue of material fact with respect to the existence of a valid confidentiality agreement.

With respect to the second element, however, the facts are not in dispute. Plaintiff alleges in its complaint that defendant used the Confidential and Proprietary Information

and began selling scrap to plaintiff's vendees.  Furthermore, plaintiff also points to the subsequent agreement entered into by defendant and Krentzman–which contained approximately the same contract price as the amount paid by plaintiff under the Trial Agreement–as circumstantial evidence that defendant revealed the confidential and proprietary pricing information to Krentzman in violation of the confidentiality agreement.

Kennametal has offered the sworn affidavit of Mr. Michael Krentzman, Vice President of Krentzman, in which Mr. Krentzman specifically states that he never discussed any proprietary information in his negotiations with David Fitzgerald, manager of defendant.  (Krentzman Aff., Dkt. No. 12-6, ¶¶ 4, 7.)  Mr. Krentzman further states that although he was informed that Kennametal had received a better offer, he was not told "who the other party was," nor was he given any "information with regard to how [the other party] did business."  Id.  Mr. Krentzman's affidavit is supported by the deposition of Mr. Fitzgerald, who stated that he never revealed any information regarding plaintiff.  (Resila Aff., Ex. F Fitzgerald Dep. at 100-101, Dkt. No. 12-4.)

Plaintiff's submitted evidence of a breach is not sufficient to create a genuine issue of disputed fact.  While plaintiff attempts to create an inference of breach by pointing to approximately the same price in defendant's subsequent agreement with Krentzman, such circumstantial evidence is insufficient to dispute the testimony offered by defendant. Plaintiff has no personal knowledge of the conversations that occurred between defendant and Krentzman, nor has plaintiff introduced any direct evidence to contradict the sworn testimony of Mr. Krentzman and Mr. Fitzgerald, in which each party unequivocally denies that any confidential or proprietary information was revealed.

It is important to note that although the circumstantial evidence to which plaintiff points is insufficient to create a disputed issue of fact in this instance, there may be circumstances in which identical terms in a subsequent agreement may create an inference of a breach of an existing confidentiality agreement.  For example, if plaintiff were to establish that knowledge of the pricing and market information was known exclusively by plaintiff and that possession of such information represented the only way to obtain the prices offered by plaintiff, then the existence of an identical pricing agreement between defendant and a third party could provide enough circumstantial evidence to create a disputed issue of fact as to whether defendant breached the confidentiality agreement with plaintiff.  However, in this case, plaintiff has not established that the Confidential and Proprietary Information allegedly divulged by defendant was known exclusively by plaintiff, nor has it shown that knowledge of such information is the only way to obtain similar prices.  Further, although the prices were approximately the same, they were not identical.  Thus, plaintiff's allegation amounts to speculation and, without more, is insufficient to contradict defendant's evidence that the information was never revealed, particularly in light of plaintiff's complex profit sharing formula that would result in differing amounts paid to Kennametal depending upon the price at which Low Carbon was able to sell the scrap metal.

In sum, despite the disputed issues of fact with the respect to the existence of the contract, summary judgment in favor of defendant will nonetheless be granted as plaintiff has failed to raise a genuine issue of fact with respect to the element of breach.

### C. Implied Covenant of Good Faith and Fair Dealing (Second Cause of Action)

Kennametal moves for summary judgment on Low Carbon's Second Cause of

Action, which alleges that defendant breached the implied covenant of good faith and fair dealing when it agreed not to reveal Confidential and Proprietary Information and allegedly disclosed said information to Krentzman.

Low Carbon's claim misconstrues the law governing implied covenants of good faith and fair dealing.  The good faith covenant is an interpretive tool used by the courts to determine the parties' justifiable expectations in the event of a breach of an unspecified or ambiguous contract provision.  Not surprisingly, the good faith covenant cannot be used to override an express contractual term, and a party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are "identical to" a claim for "relief under an established cause of action."  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 702 (3d Cir. 1993) (noting that Parkway's allegations concerning the closing of a garage in bad faith were identical to its allegations under 42 U.S.C. § 1983 and, therefore, there was no reason to imply a separate cause of action for breach of a duty of good faith); see also D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa.1981) (refusing to recognize separate cause of action for breach of duty of good faith where adequate remedy was provided under Unfair Insurance Practices Act.); Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000).

Again, Low Carbon's breach of contract claim alleges that Kennametal violated the confidentiality agreement when it revealed Confidential and Proprietary Information to Krentzman.  Plaintiff argues that defendant's alleged revelation also constituted a breach of good faith and fair dealing as defendant had specifically contracted not to disclose plaintiff's Confidential and Proprietary Information.  It is clear that the alleged conduct

underlying plaintiff's breach of implied covenant of good faith and fair dealing claim is identical to that underlying the breach of contract claim under which plaintiff has already sought relief.  Accordingly, under Pennsylvania law, plaintiff is not entitled to maintain a separate cause of action for a breach of implied covenant of good faith and fair dealing.

### D.  Unjust Enrichment (Third Cause of Action)

Kennametal moves for summary judgment on plaintiff's Third Cause of Action, which alleges that defendant has been unjustly enriched as a result of its breach of the confidentiality agreement.  Under Pennsylvania law, the elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (citing Limbach Co., LLC v. City of Philadelphia, 905 A.2d 567, 575 ( Pa. Commw. Ct. 2006)).  To sustain a claim of unjust enrichment, the plaintiff must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.  Id. (citing Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).

Even construing all facts and inferences in favor of the plaintiff, Low Carbon has failed to identify disputed facts with respect to the second element of unjust enrichment.  Again, although plaintiff alleges that Kennametal divulged Confidential and Proprietary Information to Krentzman, it has failed to introduce sufficient evidence to dispute the testimony of Mr. Krentzman and Mr. Fitzgerald, in which the two parties unequivocally

deny that any such information was revealed.  Since plaintiff has failed to introduce any facts to create even an inference that defendant revealed the Confidential and Proprietary Information, it cannot be said that defendant appreciated any unjust benefit.  Thus, there are no disputed issues of fact with respect the second element of unjust enrichment.

### E.  Fraud and Misrepresentation (Fourth and Fifth Causes of Action)

Kennametal moves for summary judgment on Low Carbon's Fourth and Fifth Causes of Action for fraud and misrepresentation, which allege that defendant committed fraud by representing that it was entering into the Trial Agreement to determine if it would financially benefit, and if so, to enter into a subsequent long-term agreement with plaintiff.

The elements of fraud are: (1) a representation; (2) which is material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).

Generally, a claim of fraud must rest on a falsely made assertion as to a matter of past or existing fact only.  Jordan v. SmithKline Beecham, Inc., 958 F.Supp. 1012, 1020 (E.D. Pa. 1997) (citing BMB Assocs. v. Ortwein, No. CIV.A. 93-1644,1994 WL 314330 (E.D. Pa. June 29, 1994)).  However, many jurisdictions, including Pennsylvania, permit a claim of fraud based on a future promise when the promisor has no intention of carrying out the promise.  Nat'l Data Payment v. Meridian Bank, 212 F.3d 849, 858 (3d Cir. 2000). Specifically, Pennsylvania law provides that a statement as to future plans or intentions may be fraudulent if it knowingly misstates the speaker's true state of mind when made. Id.

Kennametal contends that summary judgment is appropriate with respect to Low Carbon's fraud and misrepresentation claims because any promises or statements of future intent to enter into a long-term agreement made by Fitzgerald during the negotiation of the Trial Agreement must be precluded as parol evidence.

It is well-settled in Pennsylvania law that the intention of the parties to a written contract is contained in the writing itself.  Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001) (citing Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)).  Thus, when a written contract is clear and unequivocal, the intention of the parties and the meaning of the contract must be determined by the content of the written agreement alone.  Id.; Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982).  "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties."  Great American Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008).  Whether a contract's language is ambiguous is a question of law.  Kripp v. Kripp, 849 A.2d 1159, 1164 (Pa. 2004) (citing Easton v. Washington County Ins. Co., 137 A.2d 332, 336 (Pa. 1957)).

In the present action, the written Trial Agreement states that "[defendant] agrees to allow [plaintiff] to schedule and remove three trailer loads of waste steel turnings for the purpose of evaluating the content and weight quantity that could be expected per truckload should [defendant] and [plaintiff] enter a business arrangement . . . ."  Nowhere within the express language of the Trial Agreement did defendant manifest an intention to bind itself to a subsequent, long-term agreement.  Rather, the Trial Agreement clearly

states that the purpose of the agreement is to determine the content and weight quantity that could be expected in the event that the two parties enter a future business arrangement.  Since the language of the Trial Agreement is clear and contains no evidence of an intention to enter into a future agreement, as a matter of law, parol evidence cannot be used to show an alternate interpretation of the parties' intent.

Plaintiff's sole argument in opposition is that the trier of fact could conclude that defendant never intended to adhere to the purported confidentiality agreement when the parties entered into the contract.  However, plaintiff has not put forth any facts to support this conclusory argument and, as indicated above, any facts offered by plaintiff would be inadmissible parol evidence.  Thus, summary judgment will be granted dismissing the Fourth and Fifth Causes of Action.

### F.  Injunctive Relief (Sixth Cause of Action)

Because the above substantive causes of action will be dismissed, Low Carbon's request for injunctive relief must be denied.

## IV.  CONCLUSION

Kennametal's motion for summary judgment with respect to plaintiff's First Cause of Action for breach of contract and Third Cause of Action for unjust enrichment will be granted as Low Carbon has failed to introduce any viable evidence to create a disputed issue of material fact as to whether the Confidential and Proprietary Information was revealed by defendant.

In addition, summary judgment will be granted in favor of defendant on plaintiff's Second Cause of Action for breach of good faith and fair dealing since, under Pennsylvania law, a plaintiff cannot maintain such an action where the alleged underlying

conduct is identical to that which underlies a breach of contract claim.  Similarly, summary judgment in favor of defendant on plaintiff's Fourth and Fifth Causes of Action for fraud and misrepresentation will also be granted.

Finally, in light of the foregoing decision with respect to the substantive claims, plaintiff's request for injunctive relief must also be denied.

Accordingly, it is

ORDERED that

1.  Defendant's motion for summary judgment is GRANTED; and

2.  Plaintiff's complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

The Clerk is directed to enter judgment accordingly.

_____
United States District Judge

Dated:   March 17, 2010
         Utica, New York.